UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROSA M. BUSCHLEN<br>3045 Azure Cove<br>Aurora, IL 60503<br><br>Plaintiff,<br><br>v.<br><br>ERIC FANNING,<br>Secretary of the Army<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CA No. _______________ |

**COMPLAINT FOR DECLARATORY RELIEF**

This is a non-monetary claim to set aside and remand the decision of the Army Board for Correction of Military Records # AR2010-20167 (13 April 2011), that denied plaintiff's 2011 request for referral into the Disability Evaluation System [DES] retroactive to 2002 in lieu of separation from active duty for failure of promotion.

Plaintiff challenges as arbitrary and capricious the BCMR's clear errors of material facts: when finding her Post Traumatic Stress Disorder [PTSD] was ineligible for disability processing as "Existing Prior to Service" it overlooked she had over 8 years of active federal Army service, therefore the PTSD qualifies as in-service disability. BCMR erred finding her disability did not impact her misconduct causing separation by applying the wrong standard that she must fail understand right and wrong; the administrative separation standard when unfitting mental disability is at issue is whether it "could be the cause" of the misconduct or substandard performance. BCMR erred finding the misconduct was not related to PTSD with Depressive Disorder.

Plaintiff is seeking a remand as the BCMR's decision-making process was deficient, and not for the court to direct plaintiff's entry into the DES.

## JURISDICTION AND VENUE

Jurisdiction is conferred on this Honorable Court by the Administrative Procedure Act, as amended, 5 U.S.C. § 702 and § 706(2)(A).

Venue is proper as the Defendant is found in this District.

## PARTIES

Plaintiff, Rosa Buschlen, is a former Army officer on full time active duty, in the Reserve.

Defendant, Eric Fanning, in his official capacity, is the Secretary of the Army.

## FACTS

1. From 1978-82 Ms. Buschlen completed a 4-year Bachelors Degree. Ex. D 32-34.[1]

2. In August 1982 she enlisted for 5 years in the U.S. Army Reserve [USAR]. This was part-time military service - monthly drill assemblies, annual training, periodic active duty. See 10 U.S.C. § 10147(a). She completed about 5 months active duty in basic and advanced training.

3. In 1985, after entering into a Masters Degree program, she began an ROTC commissioning program. In April 1987 she received a Masters Degree in Health Sciences. Ex. D 31

4. In May 1987 she was commissioned a 2nd Lieutenant, USAR. On active duty she completed the basic course, then advanced course, in the Adjutant General Corps. Ex. D 29, 30.

5. From 1988-92, LT Buschlen was assigned as adjutant staff officer in various units. She received above average Officer Evaluation Reports [OER]. In 1993 she received an Army Commendation Medal [ARCOM]. Ex. D 26-28.

[1] Citation to exhibits presented before the BCMR

6. In 1993 she was promoted to Captain, USAR.

7. From 1993 to 1995 CPT Buschlen, attended more military schools, and assigned to different USAR units, with increasing responsibility. Her OERs were above average. Ex. D. 12-21.

8. In August 1995, CPT Buschlen's successful performance resulted in acceptance into the full-time active duty program to train USAR units, the "Active Guard Reserve." 10 U.S.C. § 12310. She was reassigned to Fort Lewis, WA. In 1997 she received a Meritorious Service Medal [higher award than ARCOM]. Ex. D. 14, 17-20, 34.

9. From June 1997 - September 98 CPT Buschlen was reassigned to another unit in Washington state. Her two OERs were outstanding. She passed her 3 year probation period, entering indefinite AGR status.

10. In September 1998, CPT Buschlen was reassigned as an AGR officer in a USAR unit near Los Angeles, CA, with some duties at Fort Irwin, CA. Ex. D at 10 (OER).

**1999: Onset mental health problems: PTSD with Depressive Disorder**.

11. In the November of 1998, Ms. Buschlen's 21 year old son died tragically during a family camping trip. "He became dehydrated resulting in an unexpected death." Ex. M at 5. In various later medical reports, Buschlen "reported episodic grief since then." Id at 5; Ex D 5 (date of death November 1998).

12. Due to Buschlen's prior trauma as a child, this "secondary traumatic death" of her son caused clinical depression, and PTSD "delayed onset." Ex. M 10. The PTSD arose from a traumatic childhood in Mississippi living in a predominantly white neighborhood in the 1950s. Ms. Buschlen is black and grew up in a discriminatory and physical threatening environment. There was an

episode as a young girl when white adults gave their dogs "a command to attack," seen as a threat to her life. She developed a hyper-vigilant startle response to perceived threats to her safety.

13. It appears Ms. Buschlen fully met all PTSD criteria as a child, but the disorder was in remission by young adulthood - successful completion of several college degrees, with enlisted and officer reserve service from 1982 to 1995, and AGR duty through 1998. The PTSD then resurfaced, triggered in 1998 with death of her son. There is no medical statement that active duty military service otherwise hastened or aggravated her PTSD beyond its natural progression. Army Reg. AR 635-40 ¶ 4-19e (preexisting disabilities not eligible for DES entry unless service aggravates or hastens natural progression of the condition beyond the normal or anticipated). see M 5, 9-10.[2]

14. By the Spring-Summer 1999, CPT Buschlen was suffering from feelings of inadequacy in the work place, depressive symptoms, angry outbursts. Ex. M 2. This included recurrent nightmares, angry feelings, irritability, paranoia towards her supervisors, difficulty concentrating, and somatic symptoms of severe headache and dizziness. Ex. M 3 (Medical Board Nov 2001 symptoms "continued for over two years").

15. CPT Buschlen did not seek mental health care, but was "driven in her desire to explain her felt wrongdoing" by her chain of command, singled out for mistreatment. Ex. M 1-2, 7. Superiors were "treating me unfairly and have set me up for failure." In June 1999 she filed an EO complaint for racial discrimination. Ex. D at 11-A ¶ 3a, b, 11-D; Ex. M 1-3 (Medical Board in

[2] The November 2001 Medical Board diagnosed:

> PTSD, mild to moderate...with delayed onset, existed prior to enlistment as manifested by startle response..... with significant recollection of prior physical threat to her life as a child...is now manifested as avoidance, and fearful reaction to potential threat to her occupational stability and to her physical well being by her immediate supervisor....

The VA 2002 after separation used this to deny PTSD "service-connection" for rating/disability compensation. This does not prevent veterans from paying for treatment. But without service-connection access to care is lowest priority. https://www.va.gov/healthbenefits/resources/priority_groups.asp.

November 2001 - "for the next two years she was targeted for mistreatment").

16. On 9 January 2000, CPT Buschlen was disciplined with an administrative reprimand. This was for a pattern of misconduct primarily for

> repeated use of insulting and profane language and a loud an abusive tone of voice toward other soldiers of all ranks.....inability to control or manage your anger; refusal to accept constructive criticism....recurring and sudden departures and unauthorized departures from your duty station......[for addressing in rude and insubordinate manner a superior * * use of profane and insulting language to other captains....].

Ex. D 3-4.

17. In February 2000 she received an adverse Referred OER. It contained negative comments, below average peer ranking, and "Do Not Promote." Ex. D 10-11 (Rater: "at times [she was] confrontational...makes careless avoidable mistakes;" Senior Rater: "repeated acts of insubordination, persistent failure to follow instructions..."). Ex. D 11.

18. In response to the adverse OER, she initiated a Commander's Inquiry feeling targeted for mistreatment. Ex. M. 2

**<u>February-March 2000: mental health examination</u>**.

19. In February 2000 the command involuntarily referred her for a mental health exam. Ex. M 2 (Fort Irwin, Army Hospital). She reported only some of her psychiatric problems., and therefore received no diagnoses Ex. M 7; Ex. M 8 (reports of multiple somatic symptoms; denied suicidal homicidal ideation, no desire to harm anyone). Reluctant to admit the full scope of her mental health problems, she filed for an IG investigation, a complaint for reprisal, and Congressional Inquiry. These focused "around an occupational problem with felt mistreatment." Ex. M at 2-3.

20. In March 2000, the Army sought a "second opinion" on mental health from the Naval Medical Center, 120 miles south in San Diego, CA. Ex. M 2-3.[3]

21. On 13 March 2000 CPT Buschlen was evaluated at the Naval Medical Center. She did "display significant depressive symptoms...of low mood, irritability, dread anger, and felt mistreatment" in the context of her occupational problem. She also reported

> suffering from recurrent nightmares, angry feelings, irritability, paranoia towards her 'co-conspirators'...difficulty concentrating, with somatic symptoms of severe headache and dizziness.

Ex. M 3 (2001 Medical Board).

**June 2000: continuing mental health problems; second reprimand.**

22. In August 2000 CPT Buschlen received a second Reprimand for continued "misconduct and unprofessional performance." This arose during annual training [ADT] in June 2000. The reprimand, along with her rebuttal, shows CPT Buschlen's mental health symptoms —

- Erratic behavior of angry outbursts, the reprimand depicts paranoia, persecution:

> While answering a question by...a superior officer...you became very angry, started yelling, and accused everyone in the G-1 section of working against you. You then stormed out of the office without permission, stating you were going to sick call.

Ex. D at page 2-A ¶2 (Major General Comstock reprimand)[hereinafter the "yelling incident"].

- concentration and memory problems were so severe she was "not able to perform basic tasks [that] that a private could do." [4]

[3] The later 2001 Medical Board inadvertently states the date of this second opinion as "13 MAR 2001." The year should read "2000." Ex. M 2, 7-8).

[4] Ex. D at 2A ¶ 3 (inability to respond to personnel questions; not understand map symbols); Ex. D at 2C-2D, MAJ Toyos, Deputy G1, Reprimand Supporting Statement (paragraphs 3-4 Buschlen unable to prepare strength information and PSR; unable to prepare information slides or answer any personnel questions; at paragraphs 7-8 said Buschlen had a short attention span; does not retain what she is taught; quickly forgets basic skills taught the same week; "grasp of map symbols is less than an [Army] private," at paragraph 10 "incapable of grasping basic concepts.")

● Evidence of a delusional or disorganized thought process:

> During a simulated exercise involving the defense of allies in South Korea against an attack by communist forces from North Korea, ***you did not understand whether the United States was on the side of South Korea or North Korea.***

Ex. D at 2A ¶ 3 (MG Comstock)[emphasis added].

23. On 10 August 2000, CPT Buschlen was non-selected for promotion to Major. Ex. C 2

24. In September 2000, her Army general health provider recommended she "attend mental health care at the Los Angeles Air Force Base." Ex. M 2-3.[5] She began "outpatient supportive psychotherapy" and medication trials. Ex. M 8-9. There was "only mild reduction of psychological stress after over one year of outpatient psychiatric care, and medications." Ex. M 10

<u>Processing for misconduct separation; but separated for promotion failure (non-selections)</u>

25. In September 2000 CPT Buschlen's records were sent to the Dep't of Army Active Duty Board [DAADB](considers reserve officers on active duty for involuntary release). Ex. B 5-8.

26. In April 2001 the DAADB recommended release for misconduct/poor performance.

27. In the interim on 26 July 2001 CPT Buschlen was twice non-selected for promotion, mandating separation. and reassigned. Ex. C 1. She did not receive an OER in July 2001, the last report was the Referred OER ending September 1999. Apparently from July 2000 - July 2001, she was in nominal AGR status, but in "outpatient psychiatric supportive care including psychotropic medication trials." Ex. M 10-11.

28. Pending separation, on 6 August 2001 CPT Buschlen was formally removed from AGR

---

[5] Again, year date should be September 2000, not 2001.

status. Reassigned as an administrative assistant in a drug testing lab, without subordinates or leadership; OER rater was a civilian; her duties were scheduling drug tests. Ex. D 1-2 (OER 6 Aug to 30 Nov 2001). The OER states "4 rated months" but is incorrect. Rated time of about 90 days was at best intermittent. Significantly this was not military AGR duty, not rated f0-3 grade (CPT), but a Department of Army [DA] Civilian GS-5 level equating by DoD to E-5 (junior sergeant). ¶ 51 infra

29. In September 2001, CPT Buschlen began her separation physical examination. She reported symptoms consistent with depression and PTSD. She was referred back to her treating military physician at Fort Irwin. Ex. M 4, 8. The Army doctor after evaluation, sent her in October for a "comprehensive psychiatric examination" to the Naval Medical Center, San Diego.

30. On 11 October 2001, the DAAB recommendation was approved; she was "approved for release" for misconduct/substandard performance of duty. Ex. B 2.

31. The Army decided not to implement the DAADB action, and never issued release orders. On 18 October 2001 the Army instead issued release orders for "promotion failure." Her discharge/release certificate DD 214 in January 2002 cites this reason, the consistent provision "AR 600-8-24, para 2-41" and separation code, JGB. Ex. A 4-6.

32. The October 2001 orders granted separation pay, relying on comprehensive review of duty and pay records from 1982 to the projected release 1 January 2002. This was to accurately determine the precise amount of separation pay. She completed "8 years, 10 months, 11 days of total active federal service [AFS]; 6 years, 5 months, 5 days of continuous AFS; and 19 years, 5 months, 26 days of total federal service" (towards non-regular Reserve retirement at age 60). Ex. A 5.

33. CPT Buschlen received advance "transition leave" 45 days starting 16 Nov though 1 Jan 2002. Orders changed reporting date to the transition unit 27 Dec to 15 Nov. Ex A 9. the time for

out-processing entirely from the Army (versus routine duty transfer) requires at least 2 weeks *before* reporting to the transition unit. AR 600-8-101 ¶ 3-5a(3). CPT Buschlen had to begin out-processing by the end of October to meet the 15 Nov departure date on transition leave. From August she was still in outpatient psychiatric supportive care; in September underwent a physical examination, evaluated at the Ft Irwin hospital; in October sent from Los Angeles 120 miles south to San Diego for the comprehensive psychiatric examination, and Navy medical board.

Medical Board 7 Nov 01; PTSD with Depressive Disorder unfitting; severe military impairment

34. The Navy Medical Board, reviewed all prior treatment records 1999 to 2001, interviewed CPT Buschlen, considered her past duty performance and discipline, was formally convened by board members, provided these diagnoses as one psychiatric disorder:

> ● Axis I. Depressive Disorder, moderate without psychotic features. Only improved mildly with medication, outpatient therapy. M 9-10.
>
> ● Axis I. Secondary PTSD, mild to moderate severity; with delayed onset, existed prior to enlistment. Ex. M 10.

The board found she has only mild reduction in psychological stress from over the past year. The recommendations were that, Depressive Disorder together with secondary PTSD, or collectively, she

> suffers from a psychiatric disorder of mild to moderate severity, which does significantly impair her ability to perform military service. Therefore, she is considered Not Fit For Duty...

Ex. M 11. The Board added a GAF score 55 [moderate]. And she "may benefit from follow-up care at the nearest treatment center as provided by her Command." [6]

35. 2001 medical board performed both MEB and PEB functions. The report of the Medical

[6] GAF score of 55 (moderate), with severe military impairment. This score equates to between 50% to 70% rating. e.g. boards.law.af.mil/AF/PDBR/CY2013/PD201302357.rtf (Dep't of Defense Physical Disability Board of Review)(PTSD moderate symptoms, GAF score 54 required 50% Army rating); https://www. va.gov/vetapp10/files2/1016579.txt (PTSD moderate to severe symptoms, GAF score 50; required 70% VA rating).

Board referred to itself as a "Medical Evaluation Board." Ex. M 11. The Navy term 'Medical Board' vernacular for their MEB. Consistent with the Navy MEB regulation, it used the MEB format Form "NAVMED 6100/2," followed MEB format of subjects to address, including psychiatric and orthopedic conditions (adding no serious orthopedic conditions as to merit diagnosis). Id. Encl (8). The board went beyond MEB practice into the reserved PEB function concluding CPT Buschlen's Depressive Disorder collectively with PTSD, "significantly impaired her for military service," a low functioning GAF, and Not Fit for Duty. See SECNAVINST 1840.4E, Encl (3) ¶ 3901 (medical boards shall not use terms fit/unfit or reference thereto); ¶ 4301 4302 (PEB determines fit/unfit); ¶ 4334 (format for PEB is findings of fit/unfit for duty); AR 635-40 ¶ 4-9f (MEB will not refer to fit/unfit) , ¶ 4-19 (fit/unfit findings is PEB most important function).

35A. The medical board proceedings were forwarded to CPT Buschlen's unit. No additional action was taken. Separation processing for promotion failure, continued.

**21-24 November 2001: mental hospital involuntary committal for erratic behavior, psychosis**

36. From 21-24 Nov 2001, after emergency admission CPT Buschlen was involuntarily committed to a civilian psychiatric hospital. This was precipitated after Military Police placed her under custody, and subdued her with pepper spray. The hospital then placed in leather restraints for four hours. Ex. N 8. She was admitted for "acute altered mental state...[and] further psychiatric evaluation," diagnosis was "psychosis." Ex. N 2. Ex. N 7. She was committed for a "minimum 72 hours" for a mental disorder and dangerous" to herself and to others. Ex. N 1 (Admitting RN).

37. Nursing notes show Buschlen was kept in leather restraints for 4 hours. Ex. N 4. Release 24 Nov diagnosis was "probable depressive disorder with possible acute psychosis." Ex. N 10-11.[7]

[7] The exact circumstances of Buschlen's MP custody are unclear. The admitting report says during an altercation on a military base in a doctor's office; a later report says put under custody at her home on base when she assaulted MPs with a cell phone, was pepper-sprayed and restrained. Ex. N 1, 5, 8.

38. On 1 January 2002, CPT Buschlen was released from active duty.

2002-present: VA disability compensation proceedings.

39. On 8 February 2002, Buschlen submitted a VA claim for service-connected disability compensation. The VA obtained her Army personnel and health records, including the Navy 2001 Medical Board proceedings. In September the VA awarded 30% Depressive Disorder, and 30% combined for orthopedic conditions. Ex. K 1-2. The VA did not to address PTSD. Ex. K 5-6.

40. VA treatment records at the time acknowledged the 2001 PTSD diagnosis, and continued PTSD treatment. But based upon the 2001 medical board's EPTS finding, the VA did not forward the disability for rating, as not service-connected (i.e., existing prior to service). Ex. L 4 (Apr 2002 Depression/PTSD screen; positive symptoms for hyperarousal; re-experiencing trauma; depression).[8] Ex. H 3 (August 2004, VA diagnosis of PTSD); Ex. H 1-2 (2006 PTSD psychotherapy).

41. In 2007 the VA formally reaffirmed PTSD as not service-connected based on the 2001 medical board. The VA continues to treat her on a fee basis. Ex. F 5 (2008 entry, noting the 2006 PTSD diagnosis); Ex. F 1-2, 6, 9-10 (2008 diagnosis and PTSD positive screen).

42. VA diagnosis and treatment for PTSD remains, with severe symptoms. She is receiving social security disability insurance.

2011 Army BCMR decision

43. On 13 April 2011, the ABCMR denied Ms. Buschlen's request for referral into the Disability Evaluation System.

[8] In addition to answering "yes" for all 'depression' questions, Buschlen answered "yes" to questions: "patient has been—Super Alert, watchful, or on guard; has been through terrible experiences; has been bothered by repeated, disturbing memories of a stressful event."

44. The BCMR overlooked the 18 October 2001 discharge orders that calculated CPT Buschlen's total AFS. At the 2001 Navy medical board, she had well over 8 years. Ex. A 5. The medical board's finding and BCMR's affirmance, are inaccurate that her PTSD was EPTS —

> An unfitting EPTS condition is deemed in line of duty or service aggravated for purposes of disability retirement....must be on active duty for more than 30 days when found unfit and career total of 8 years of active service (active duty days) by the date of separation.

Army website interpreting 10 U.S.C. § 1207a, and DODD 1332.18.[9] This EPTS error not only affected the diagnosis, but bars Ms. Buschlen to this day from the proper VA status as service-connected entitling her to priority access to health care.[10]

45. The ABCMR in its 2011 decision mistakenly concluded this Navy Medical Board was not the equivalent of an "Medical Evaluation Board" but a "mental status evaluation." Id 7 ¶ 23a. Ignoring the medical board's actual language, the BCMR offers this fiction —

> This was a psychiatric fit for duty evaluation. The board concluded that [she] was fit for duty from a psychiatric perspective at the time . . . This is not a finding that [she] could not perform the duties of her speciality or grade.

Id., at 12 ¶ 5.[11]

46. As set forth above, the Navy medical board performed typical MEB functions. It went beyond into a typical PEB function - noting symptoms beginning over 2 years ago, CPT Buchlen was Not Fit For Duty from Depressive Disorder with PTSD that together, significantly impaired her for military service, with consistent GAF score indicating a 50-70% rating.

---

[9]http://myarmybenefits.us.army.mil/Home/Benefit_Library/Federal_Benefits_Page/DoD_Disability_Retired_Pay.html?serv=149.

[10] Tootle v. Sec'y of Navy, 446 F.3d 167, 175 (D.C.Cir. 2006)(service member suffering from deteriorating health, seeking "unfit for duty" determination and disability status undeniably offers non-monetary value).

[11] Id 6-5. The medical board never states or mentions its purpose was a "mental status evaluation." A paragraph titled "mental status examination" appears early within the main body of the report, but this is listed in the Navy MEB format. Id Encl (8) at 8-35.

47. The ABCMR believes that Buschlen was not unfit because the medical board did not recommend further disability processing. The medical board found essentially the Depressive Disorder was not separately unfitting, but together with the PTSD was unfitting: "service member suffers from *a psychiatric disorder*....which does significantly impair her ability for military service," [emphasis added]. This is a PEB function. The board also determined the PTSD was EPTS, non-service aggravating, or not in the line of duty - was not eligible for further disability processing. This is also a PEB function. AR 635-40 ¶ 4-19d.

48. The BCMR opined the Depressive Disorder and PTSD had no influence or relation to Bucshlen's conduct as described in the reprimands and referred OER. This extreme statement is predicated on misapplication of the insanity standard - the mental condition must have prevented Buschlen from understanding right and wrong. This is not the exclusive end-of-story. Initially, it is whether there "is a medical impairment not meeting medical retention standards." AR 600-8-24 (1995) ¶ 1-23a. Next, whether there is a "mental condition that contributed to the military inefficiency or unsuitability." Id ¶ 4-3 (psychiatric study will indicate if unable to distinguish right from wrong and can participate in separation proceedings). Lastly, the study will indicate "whether the mental illness could have been the cause of the conduct...." Id ¶ 4-3b.

49. But once the BCMR in 2011 raised the bar to the insanity threshold, it quickly dismissed the 2001 medical board that did not find Buschlen hallucinating and psychotic during the entire time. BCMR at 13 ¶ 10 (PTSD with depression 1999-2000 did "cause difficulties in workplace," but was not a mental disease impairing ability to understand right and wrong).

50. Even when a psychiatric study above, does not show inability to distinguish right from wrong, the Army procedurally will consider other factors, to grant in its discretion disability retirement in lieu of an adverse separation, consistent with ¶ 4-3, such as - (1) the disability could

have been the cause; or (2) disability was a contributory cause; or (3) where the disability was unrelated but inequitable to deny disability benefits. This procedure is further contained in ¶ 1-23, AR 600-8-24 (officer will be processed for adverse separation at same time as disability evaluation; if disability evaluation results in unfitness, both actions are forwarded to Army Secretary for appropriate disposition; officer processed for separation "other than for" misconduct or performance the disability takes precedence, e.g., promotion failure). There are BCMR decisions that generally show this process when disability retirement verus elimination was considered under these other factors. [12]

51. The BCMR contends the "satisfactory" OER from 7 Aug - 30 Nov 2001 proves CPT Buschlen was now fit for duty. From Sept 2001-Aug 2001 she was not rated, received not OER, was outpatient psychotherapy therapy and supportive care, in medication trials at an Air Force base. Fit for duty required clinically verified improvement, restoring the officer to full duty functions in her AGR speciality in 0-3 grade duties, and sustained satisfactory performance. AR 40-501 ¶ 3-24 (MEB referral for psychiatric disorder if fail to respond to treatment after 1 year, not restored to full duty functions in speciality).[13] None of these requirements were met. The OER duty title is "Drug Demand Reduction Assistant" [DDRA]. This OER cannot be used for a presumption of fitness for

[12] http://boards.law.af.mil/ARMY/BCMR/CY2015/20150009676.txt (AGR officer pending elimination proceeding with prior PTSD diagnosis lacking line-of-duty determination, was denied MEB; eliminated with General Discharge for misconduct; BCMR set aside discharge to process officer through DES for related PTSD for appropriate disposition whether to discharge or medically retire); http://boards.law.af.mil/ARMY/BCMR/CY2007/20070012332C080213.txt (after AGR officer approved for misconduct-elimination, diagnosed unrelated depression, orthopedic conditions; denied MEB issued General Discharge; BCMR set aside GD and offered medical retirement at 40%); http://boards.law.af.mil /ARMY/ BCMR/CY2015/20150000176.txt (AGR officer simultaneously processed PEB (unfitting for anxiety, depression, orthopedic disabilities) and processed for Elimination (recommended General Discharge for 2 DUIs, 2 referred-OERs); Secy Army converted discharge into non-regular retirement but denied medical retirement; demoted 04 to 03; BCMR affirmed); see also generally http://boards.law.af.mil/ARMY/BCMR/CY2016/20160016189.txt (PTSD mitigated reprimand for misconduct; officer's rank demotion at retirement was restored).

[13] https://www.hrc.army.mil/content/Army%20Physical%20Disability%20Evaluation%20System%20PDES. Army Physical Disability Evaluation System PDES: * * * "If the Soldier meets retention standards after 1 year, soldier returns to full military function in their units in their Military Occupational Specialty."

duty. It is not AGR authorized duty, not rated as 0-3 grade. It a DA Civilian GS-5 level equivalent to E-5 Sgt. A civilian rated GS-12 equates to a Captain 0-3.[14] The DDRA position is rated clerical, excerpted below —

**ARMY POSITION DESCRIPTION**

| **PD#:** EU394367 | **Sequence#:** VARIES | **Replaces PD#:** |
|---|---|---|

**DRUG DEMAND REDUCTION PROGRAM ASSISTANT (OA)**
**GS-0303-05**

**Organization Title:**

POSITION LOCATION:

| | |
|---|---|
| **Servicing CPAC:** FORT LEWIS, WA | **Agency:** VARIES |
| **Installation:** VARIES | **Army Command:** VARIES |
| **Region:** WEST | **Command Code:** VARIES |

POSITION CLASSIFICATION STANDARDS USED IN CLASSIFYING/GRADING POSITION:

**Citation 1:** OPM PCS MISC CLERK & ASST SERIES, GS-303, NOV 79

**Citation 2:** OPM TYPING & STENO GEG, NOV 90

**Citation 3:** OPM GLG / CLERICAL & ASST WORK, JUN 89

This listing is available at the Army Civilian Personnel Office website, http://www.cpol.army.mil/[15]

52. Secondly, the OER rated dates are wrong - end date is 15 Nov not 30 Nov; even the short 90 calendar rated-days in actuality are sporadic (as a GS-5). Much of the time she was away undergoing medical treatment, exams, evaluation by the 2001 medical board, and weeks out-processing from the Army.

53. Thirdly, her Nov 2001 medical board reviewed the past year diagnosing Depressive Disorder with PTSD that significantly impaired her ability to perform military service, and was Not Fit For Duty.

[14]http://comptroller.defense.gov/Portals/45/documents/fmr/archive/11aarch/11a_06_appendix_b_Feb98.pdf

[15]https://acpol2.army.mil/fasclass/search_fs/search_fs_output.asp?fcp=zutpk3eFRtaToL2jpsdGuam0buidbYGflaVWhmC7hLBnY3%2BWkaQ%3D. The complete listing has the same job functions in the OER "duty description" Part III.

54. Fourthly, during the proffered 'satisfactory' OER rating period her mental illness deteriorated with a psychotic break, involuntarily committed 4 days at mental hospital. At a minium the OER confirms the 2001 medical board predication that her PTSD with Depressive Disorder were unfitting because it was unstable, with drastic behavioral swings from mild to severe. Her later VA records show continual treatment for severe PTSD symptoms. The BCMR reliance on the sham OER as a presumption of return to fitness in full AGR functions as a Captain, is material error.

56. The BCMR stretches credulity that Buschlen's prior outstanding military career suddenly "crashed and burned" in 1999-2000 simply because of a workplace personality conflict — with the PTSD and Depressive Disorder not in anyway contributing, or possibly causing the misconduct and substandard performance. The retrospective findings of the 2001 medical board are forensic evidence that when her childhood Depression and PTSD re-triggered, CPT Buschlen began "reliving the prior experience" in the workplace, but perceived pathologically through PTSD distortion as threats to her safety. Ex. M 10. The behavior in her OER and reprimands, mirror the medical board's list of symptoms of these disorders.[16]

57. The BCMR admits Buschlen had PTSD with Depressive Disorder from 1999-2000, and the medical board found this significantly impaired her for military service; Not Fit for Duty. The conduct problems referred to in the reprimands and OER are also a laundry list of expected PTSD reactions. Illustrative is the VA website page on PTSD "Trauma and Anger" —

> In people with PTSD, their response to threat can become "stuck." ...responding to all stress in survival mode...."full activation" as if your life or self were threatened. This automatic response of irritability and anger...can create serious problems in the workplace...Researchers have broken down posttraumatic anger into three key aspects...

---

[16] see this complaint ¶¶ 16-17,22. OER and reprimand generally refer to inability to control anger, insulting profane language in loud an abusive tone toward other soldiers of all ranks (implies insubordinate to superiors); recurring/sudden departures and unauthorized absences; careless avoidable mistakes. Compare with Ex. M 3, 9-10 (medical board - angry feelings, irritability, episodes of angry outbursts, paranoia toward co-conspirators, significant avoidance to report and return to work, sleep difficulties/nightmares, difficulty concentrating, intrusive thoughts reliving prior experiences).

> **Arousal**: ....emotional and physical feelings of anger are more intense....often feel on edge, keyed up, or irritable....easily provoked * * *
>
> **Behavior**....act aggressively to protect yourself...especially those who went through trauma at a young age...may be impulsive, acting before they think.....Many with PTSD use aggressive responses to threat. They are not able to use other responses that could be more positive. * * *
>
> **Thoughts and Beliefs**...may think or believe that threat is all around, even when this is not true....act inflexibly toward others...provoke others into becoming hostile towards you.....

http://www.ptsd.va.gov/public/problems/anger-and-trauma.asp

58. The BCMR alternatively contends that it is "impossible" due to delay to determine whether her PTSD with Depressive Disorder influenced her misconduct and performance. This is disingenuous. The BCMR argued previously in its decision just the opposite: it could assess the impact of her disabilities finding "no conclusive relation to the medical condition." Id 11 ¶ 2, 13 ¶ 11. Morever, in past BCMR cases under much worse delays of 30-40 years, it had little problem granting disability retirement after determining PTSD contributed or likely caused the adverse discharge.[17]

59. With PTSD eligible for DES processing, the findings and recommendation of the 2001 Navy medical board clearly indicate either one of 2 options-

- permanent medical retirement for the PTSD with Depression, as unfitting with significant impairment 50-70%. 10 U.S.C. § 1201.

- alternatively, the PTSD with Depression unstable fluctuating "mild to moderate severity" indicating Temporary Disability Retired List [TDRL]. 10 U.S.C. § 1210 (periodic examination; final determination of status).[18] The rating must be at least 50%. ¶ 60 infra.

[17]AR20160003830 (November 2016) (unrecognized PTSD in 1974 at early discharge; VA did not rate PTSD until 2002; BCMR disability retirement retroactive 1974 finding PTSD likely caused early discharge)[not yet publically available on the DoD website]; http://boards.law.af.mil/ARMY/BCMR/CY2005/20050006161C070206.doc (December 2003) (unrecognized PTSD misdiagnosed personality disorder, likely caused 1975 General Discharge for misconduct; BCMR in 2003 set aside GD, granted PTSD disability retirement)

[18] http://wct.army.mil/modules/soldier/s6-tdrl.html (Army website: members on TDRL have physical disabilities unfit for military duty, but have not sufficiently stabilized to accurately assess its permanent degree of disability).

Subsequent changes to law and regulation affecting CPT Bushlen's disability evaluation

60. 14 October 2008 *Dep't of Defense Policy Memo Implementing Disability-Related Provisions of NDAA 2008*. This applied 38 C.F.R. § 4.129 Mental Disorders Due to Trauma/Stress:

> When a mental disorder develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from military service, the rating agency shall assign ...not less than 50%, [with] evaluation within six months following the discharge.

Subsequently, courts interpreted this Memo and related provisions, to apply retroactively to service members from September 11, 2001; e.g. Cook v. United States, 123 Fed.Cl. 277 (2015)(officer discharged in 2007 at 10% PTSD, Army refused to apply 4.129 retroactively). Because plaintiff was discharged after 11 Sept 2001 -

> assign him a disability rating of not less than 50% for PTSD unfitting conditions for an initial period of six months following separation, with subsequent fitness and PTSD ratings based on the applicable evidence.

Id 307. This would apply § 4.129 in the present case, in the event the ABCMR on remand enters CPT Buschlen into the DES.

61. April 2012 *Army OTSG/MEDCOM Policy Guidance on Assessment/Treatment of PTSD:*

A. A majority of servicemembers in the occupational context do not seek treatment for mental health problems until symptoms are overwhelming. As a result there may be lack of previous documentation of the condition when individuals first get evaluated. This should not be misinterpreted as evidence of secondary gain. And, it is critical behavioral health professionals do everything they can to advocate for, and provide "patient-centered" approach that is supportive and reassures patients will not be judged, at whatever stage of their illness.

B. Secondly, caution is required in attributing PTSD-like symptoms to certain other stigmatizing conditions that can result and harmful occupation actions, or administrative separations.

62. In the present case, Captain Buschlen from 1998-2000 was reluctant to seek mental health care and fully report symptoms, even after the adverse OER and reprimand. She did not begin mental health therapy and medication trials until after the second reprimand. This delayed PTSD and depression diagnoses, until after DAADB action and promotion failure.

63. Ms. Buschlen seeks review of Army BCMR decision denying her request for referral into the Disability Evaluation System.

## CAUSE OF ACTION

The 2011 decision of the Army Board for Correction of Military Records Army, denying plaintiff's request for referral into the Disability Evaluation System, violated the Administrative Procedure Act as arbitrary and capricious agency action, unsupported by substantial evidence, not in accordance with law, and otherwise constituted an injustice.

## PRAYER FOR RELIEF

That this Honorable Court declare that the Army BCMR's 2011 denial of plaintiff's request for referral into the Disability Evaluation System violated the Administrative Procedure Act as arbitrary and capricious agency action, unsupported by substantial evidence, not in accordance with law and Army regulations, or otherwise was an injustice.

That this Honorable Court remand the case to the BCMR for appropriate relief.

That based upon this remand judgment, this Honorable Court grant attorney fees.

24 March 2017

Respectfully Submitted,

a/s John A. Wickham, DC Bar 454863
32975 Saint Moritz Drive
Evergreen, CO 80439.
303 670-3825 fax: 303 670-1586
wickham1@wispertel.net (ECF account email)

Counsel for Plaintiff Ros Buschlen